IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

DAWN PROCHASKA,

        Plaintiff,

vs.

NANCY A. BERRYHILL,
Acting Commissioner of the Social
Security Administration,

        Defendant.

4:18CV3060

MEMORANDUM ORDER

This is an action for judicial review of a final decision of the Commissioner of the Social Security Administration ("the Commissioner"). The plaintiff, Dawn Prochaska, appeals the Commissioner's decision to deny her application for Social Security Disability ("Disability") benefits under the Social Security Act and seeks review pursuant to 42 U.S.C. §405(g), *see* Filing No. 10 (Plaintiff's Motion for an Order Reversing the Commissioner's Decision) and Filing No. 11 (Defendant's Motion for an Order Affirming the Commissioner's Decision). A transcript of the hearing held on February 6, 2017, is found in the record at Filing No. 8. Administrative Record ("Admin. R.") at 34-70.

## BACKGROUND

**I. Procedural History**

Prochaska, at the age of fifty, applied for a period of disability and disability insurance benefits on October 20, 2014. She alleges disability due to brain aneurysm, right arm nerve damage, numbness on the right side of her body, memory loss, and left eye double vision. Prochaska claims a disability onset date of August 31, 2013. Initially, the Commissioner denied her claims on February 3, 2015, and again on May 7, 2015,

upon reconsideration. On June 4, 2015, she filed a written request for a hearing with an Administrative Law Judge ("ALJ"). This hearing was held on February 6, 2017, in Lincoln, Nebraska. The Commissioner further denied benefits and held Prochaska not disabled on April 12, 2017. Prochaska seeks review of the ALJ's order denying disability benefits.

**II. Testimony**

Prochaska was born in 1964. She has a limited education, and a history of work experience as an injection molding machine operator, tractor assembler, and groundskeeper. At a hearing on February 6, 2017, Prochaska reported that since her aneurysm, there are times she must lay down because she is physically in too much pain to sit or stand. This occurs a couple of times per day for about ten minutes. Filing No. 8 Admin. R. at 53. Prochaska stated that she can only sit for approximately fifteen minutes before she needs to lay down or get up and walk around. *Id.* at 55. She testified that she can only stand for approximately five minutes without needing to sit or lay down. *Id.* at 53. Prochaska can reach overhead with her right hand, but reported it causes her pain. *Id.* at 53-54. Prochaska indicated that she has trouble sleeping and takes over-the-counter medication. *Id.* at 52. Prochaska also reported that she has had problems with constant double vision in her left eye since her surgery. *Id.* at 64.

Prochaska testified that since her aneurysm, she has difficulty standing because it hurts her back and hip. This led her to quit her most recent job of sweeping the floors part-time at Duck Creek Farms. *Id.* at 39-40 and 51. Prior to sweeping floors, for about three hours per day, Prochaska worked at Duck Creek Farms mowing the grass during the 2013, 2014, and 2015 grass mowing seasons. She testified that she stopped mowing the grass in 2015 because of her pain. *Id.* at 43. Prochaska testified that she was a

2

groundskeeper at Duck Creek Farms at the time of her aneurysm and that after the aneurysm she could not complete many of her duties, such as digging holes and assisting in the shop, because she did not have the strength to pick anything up anymore. *Id.* at 47. Prochaska specified in her testimony that the heaviest object she could lift was a gallon of milk. *Id.* at 49.

Prochaska testified that since her aneurysm, she cannot drive alone further than five miles because she forgets where she is going. *Id* at 48. She stated that she now has problems remembering things such as what movies she and her husband have watched, if people came over to their home in the evening, and if she has taken her medication. *Id.* at 56-57. Prochaska's husband reminds her to take her medication. She regularly takes Extra Strength Aleve for her pain and high blood pressure medicine. *Id. at 52*.

Prochaska stated that she can provide some care for her four-year-old grandson whom she and her husband have custody of four days a week, but that she cannot lift him. Prochaska testified that she takes her grandson to daycare when she is in too much pain and does not think she can take care of him very well at home. *Id.* at 48-49. She stated that her grandson attends daycare at least one day per week and up to two or three days, depending on her pain level. *Id.* at 55.

### III. Medical Evidence

Prochaska's medical record reflects that she presented to the emergency department at the Fremont Health Medical Center on August 31, 2013 with an altered level of consciousness and new onset seizure. *Id.* at 362. A computed tomography (CT) scan of her brain revealed a left intraparenchymal hematoma with associated left sided

3

subarachnoid blood, which was noted to possibly be sequela of a ruptured MCA aneurysm. *Id.* at 362-363. Prochaska was subsequently transferred from the Fremont Health Medical Center to the University of Nebraska Medical Center where Dr. William Thorell, MD, performed a left frontotemporal craniotomy and clipping of ruptured left middle cerebral artery aneurysm and placed a right frontal external ventricular drain for the treatment of hydrocephalus on August 31, 2018. *Id.* at 506. Medical records show that Prochaska remained at the hospital until she was discharged on September 13, 2013. Upon discharge the medical record reflects she was stable neurologically and continued to show signs of improvement. *Id.* at 512.

Prochaska presented to Brandon Reicks, PA, for a follow up on October 22, 2013. *Id.* at 514. On this date, the medical records reflect that Prochaska had done well in speech and physical therapy but had complaints about numbness and weakness in her right hand and left eye double vision when looking to the left. *Id.* Reicks noted that Prochaska's strength in her right upper and lower extremities was essentially full with some very mild breakaway weakness noted when compared to the left side and that she ambulated with a non-antalgic gait. *Id.* The records further state that although there was no observable evidence of word-finding difficulty at the appointment, Prochaska reported the issue on this date. *Id.* The follow up also notes that Prochaska had not contacted ophthalmology yet due to a lack of insurance. *Id.* at 515.

Prochaska was seen by Dr. Antoinette Tribulato, a non-treating physician, for a consultative examination on January 27, 2015. *Id.* at 321. The medical report from this examination notes that Prochaska reported pain and numbness in her right arm and hand as well as headaches. *Id.* Dr. Tribulato observed that Prochaska presented with an

4

antalgic gait and difficulty tandem walking. *Id.* at 322. The report documents that Prochaska had no apparent difficulty writing or hearing and that she followed directions, but that she did have difficulty recalling three items, spelling and counting backwards, and some obvious word-finding difficulty. *Id.* at 322 and 327. Dr. Tribulato concluded that Prochaska was limited in her ability to lift, carry, and grip on the right, but that she could handle sedentary duty. *Id.* at 326. Dr. Tribulato further concluded that Prochaska had no significant limitations to sitting or standing, mildly limited walking as tolerated, limited bending and twisting, and could not climb or crawl. *Id.*

The ALJ afforded Dr. Tribulato's opinion "great weight." *Id.* at 17. The ALJ found that Dr. Tribulato's opinions were "mostly consistent with the medical evidence of records in regards to the claimant's limitations." *Id.* The ALJ found that Dr. Tribulato had no explanation for his opinion that the claimant could only perform sedentary work. *Id.*

Prochaska was seen by Dr. Holly Filcheck, PhD, for a non-treating, consultative psychological interview and report on January 27, 2015. *Id.* at 331. Dr. Filcheck's records reflect that Prochaska did not use any assistive devices, but that Prochaska reported difficulty with her immediate and short-term memory, making it hard for her understand and remember short and simple instructions. *Id.* at 331 and 333-334. Dr. Filcheck's report noted that Prochaska appeared to have difficulty remembering complex instructions due to memory concerns, but that her concentration and attention appeared to be adequate. *Id.* at 333. Dr. Filcheck concluded that Prochaska would have no difficulty adapting to changes in life or structure but recommended a WMS-IV to determine the nature of her memory concerns. *Id.* The ALJ afforded Dr. Filcheck's opinion "some weight." *Id.* at 17.

5

Prochaska was also seen by her treating physician's assistant, James D. Witter, PA-C, between January 29, 2015 and August 16, 2016. *Id.* at 336-339, 499-503. Progress notes from a visit on August 21, 2015, reflects that Mr. Witter offered Prochaska other pain medications on this date for her chronic right pain and weakness, but that she was not interested mainly because of cost. *Id.* at 503. These progress notes also reflected that Prochaska reported that she worked about nine hours per week at this time, but that she felt like she had to take frequent breaks. *Id.* It also reflected her diplopia and memory recall issues. *Id.* A progress note from August 16, 2016, stated that Prochaska was in for a follow up regarding her hypertension and that things were going well for her on this date. *Id.* at 502. The progress note on this date does not reference Prochaska's pain or history of aneurysm. *Id.*

On August 21, 2015, Mr. Witter, PA-C, prepared a medical source statement and opined that Prochaska could not reasonably be expected to work an 8-hour day, 40-hour work week, on a regular basis, without missing more than two days per month due to her disabilities. *Id.* at 342-343. Mr. Witter opined that Prochaska had the following limitations: sitting, standing, walking, stooping, and climbing. *Id.* Mr. Witter further concluded on the medical source statement that Prochaska would have a reasonable medical need to lie down to due to pain, fatigue, or other impairment every two to three hours for thirty to sixty minutes. *Id.*

The ALJ afforded Mr. Witter's opinion "little weight." *Id.* at 17.

## IV. Vocational Expert Testimony

A vocational expert ("VE") also testified at the hearing held in February 2017. First, the VE testified that a person with Prochaska's work history as an injection molding

6

machine operator, tractor assembler, and groundkeeper, would not have any transferable skills from those occupations at the light or sedentary level. *Id.* at 65-66. Next, the ALJ asked the expert whether there was any other occupation for a hypothetical worker with Prochaska's past relevant work and limitations including the ability to perform light work, stoop, kneel, crouch and crawl only occasionally, no ability to climb ladders or be exposed to hazards such as working in unprotected heights, the ability to finger with the right hand frequently, the ability to perform work that is simple, and the ability to respond appropriately to at least routine changes in a workplace. *Id.* at 67. The VE stated that such a person could perform other work in the national economy as a fast-food worker, cashier II, and a cafeteria attendant. *Id.* The ALJ then asked the VE whether this hypothetical worker could perform any sedentary work. *Id.* at 68. The VE responded that this hypothetical worker could also perform sedentary work in the national economy as a document preparer, telephone quotation clerk, and order clerk food and beverage. *Id.*

When Prochaska's attorney questioned the VE regarding the hypotheticals and added a limitation that this worker would need to take breaks every two hours for roughly twenty minutes a piece, the expert concluded that such a person would not be competitively employable. *Id.* The expert also testified that a person who would be off-task fifteen percent of the day or more would also not be competitively employable and that a person who misses two or more days per month would exceed what is customarily allowed by employers for absenteeism. *Id.* at 69.

**V. ALJ's Findings**

The ALJ found that Prochaska is not under disability as defined in the Social Security Act. *Id.* at 13-14. The ALJ undertook the familiar five step sequential process

7

for analyzing and determining disability. *Id.* at 10-12. The ALJ found that Prochaska has not engaged in substantial gainful activity since her alleged onset date, August 31, 2013. *Id.* at 12. The ALJ supported the findings that Prochaska suffered from the residuals of a cerebrovascular accident. *Id.* The ALJ concluded that Prochaska's impairments are not listed and do not medically equal a listed impairment in 20 CFR Part 404, Subpart P, Appendix 1 (20 CRF 404.1520(d), 404.1525, 404.1526). *Id.* at 13.

The ALJ held that any mental limitations of Prochaska are a result of her physical impairment. *Id.* at 15. The ALJ concluded that Prochaska has the residual functional capacity ("RFC") to perform light work with the following exceptions:

> [S]he is able to perform work that requires only occasional stooping, kneeling, crouching, and crawling. The claimant is able to perform work that does not require climbing of ladders or exposure to hazards such as work at unprotected heights. She is able to finger with the right hand frequently. Finally, due to limitations in the claimant's memory, she is able to perform work that is simple and to respond appropriately to routine changes in the workplace. *Id.* at 13.

In analyzing Prochaska's ability to work, the ALJ noted that Prochaska reported no problems in caring for her own personal hygiene and completed household chores such as cooking dinner. *Id.* at 14. The ALJ also considered that Prochaska mowed the lawn using a riding lawn mower for about six hours once per week in 2013, 2014, and 2015. *Id.* at 14 and 42. The ALJ did not consider that Prochaska testified that she stopped mowing lawns in 2015 because of the pain and subsequently reported that she felt more pain at the hearing date in 2017 than six months after her aneurysm in 2014. *Id.* at 43 and 61-62.

8

**STANDARD OF REVIEW**

The Court reviews a denial of benefits by the Commissioner to determine whether the denial is "supported by substantial evidence on the record as a whole." *Johnson v. Astrue*, 628 F.3d 991, 992 (8th Cir. 2011) (quoting *Dolph v. Barnhart*, 308 F.3d 876, 877 (8th Cir. 2002)). Substantial evidence means something less than a preponderance of the evidence, but enough that a reasonable mind might accept the evidence as adequate to support a conclusion. *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009) (quoting *Lewis v. Barnhart*, 353 F.3d 642, 645 (8th Cir. 2003)).

The Court cannot reverse a decision supported by substantial evidence, "if [the court] may have reached a different outcome." *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010) (citations omitted). However, this "review is more than a search of the record for evidence supporting the [Commissioner's] findings," and "requires a scrutinizing analysis." *Scott ex rel. Scott v. Astrue*, 529 F.3d 818, 821 (8th Cir. 2008) (quoting *Hunt v. Massanari*, 250 F.3d 622, 624 (8th Cir. 2001) and *Cooper v. Sec'y of Health & Human Servs.*, 919 F.2d 1317, 1320 (8th Cir. 1990)).

The Court must consider evidence that detracts from the Commissioner's decision in addition to evidence that supports it. *Finch v. Astrue*, 547 F.3d 933, 935. (8th Cir. 2008) (citations omitted). The Court determines whether the Commissioner's decision "is based on legal error." *Lowe v. Apfel,* 226 F.3d 969, 971 (8th Cir. 2000) (citations omitted).

**ARGUMENTS**

Prochaska argues that the ALJ erred in not performing a psychiatric review technique ("PRT") and therefore did not appropriately develop the record with regards to

9

the claimant's mental impairments. Additionally, Prochaska argues that the ALJ's RFC determination was not supported by substantial evidence because the ALJ failed to incorporate portions of Dr. Tribulato's opinion into his hypothetical question to the vocational expert without explanation after crediting the opinion. Prochaska contends that this resulted in an incomplete hypothetical question which cannot constitute substantial evidence to support the ALJ's decision.

## DISCUSSION

### I. Sequential Analysis

The Commissioner performs a five-step sequential analysis described in the Social Security Regulations to determine whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520(a), 20 C.F.R. §§ 416.920(a). The Commissioner evaluates "(1) whether the claimant is engaged in any substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals an impairment listed in 20 C.F.R. Pt. 404, Subpart P, App. 1; (4) whether the claimant can return to her past relevant work; and (5) whether the claimant can adjust to other work in the national economy." *Tilley v. Astrue*, 580 F.3d 675, 678 n.9 (8th Cir. 2009); *see also Kluesner v. Astrue*, 607 F.3d 533, 537 (8th Cir. 2010).

At step three of the sequential evaluation, "if the claimant suffers from an impairment that is listed in the Appendix to 20 C.F.R. Pt. 404, Subpart P ("the listings") or is equal to such a listed impairment, the claimant will be determined disabled without consideration of age, education, or work experience." *Flanery v. Chater*, 112 F.3d 346, 349 (8th Cir. 1997); *see also* 20 C.F.R. § 404.1525. The listings stipulate the criteria for

each impairment that is considered presumptively disabling. 20 C.F.R. Pt. 404, Subpart P, App. 1.

In order to be presumptively disabled by reason of a traumatic brain injury, a claimant must satisfy the requirements of the criteria for the impairment set forth in 20 C.F.R. Pt. 404, Subpart P, App. 1 § 11.18 A or B. In regard to Prochaska's impairment the Court will focus on § 11.18 B. A presumptively disabling impairment by reason of a traumatic brain injury must be characterized by:

> B. Marked limitation (see 11.00G2) in physical functioning (see 11.00G2a) and in one of the following areas of mental functioning, both persisting for at least 3 consecutive months after the insult:
>
> 1. Understanding, remembering, or applying information (see 11.00G3b(i)); or
> 2. Interacting with others (see 11.00G3b(ii)); or
> 3. Concentrating, persisting, or maintaining pace (see 11.00G3b(iii)); or
> 4. Adapting or managing oneself (see 11.00G3b(iv)). 20 C.F.R. Pt. 404, Subpart P, App. 1 § 11.18B.

To document a neurological disorder, the Court needs both medical and nonmedical evidence to assess the effects of the claimant's neurological disorder. 20 C.F.R. Pt. 404, Subpart P, App. 1 § 11.00B. Marked limitation in physical functioning after a traumatic brain injury may be found if a claimant's symptoms, such as pain or fatigue, as documented in the medical record, and caused by the neurological disorder or its treatment, seriously limit the claimant's ability to independently initiate, sustain, and complete work-related motor functions, or the other physical functions or physiological processes that support those motor functions. 20 C.F.R. Pt. 404, Subpart P, App. 1 § 11.00G3a. This limitation must last or be expected to last at least 12 months. *Id.*

The Court has carefully reviewed the record in this regard. The Court finds that Prochaska's impairment does meet the criteria for a traumatic brain injury. As evidenced by both the medical record and Prochaska's testimony, Prochaska's aneurysm resulted in physical pain and fatigue which limited her ability to sustain and complete work-related motor functions such as standing and sitting for extended periods of time and limiting her strength overall. In addition to her physical pain, Prochaska's documented issues with memory loss sufficiently meet the criteria for a marked limitation in remembering information such as forgetting where she is driving if driving over five miles per her testimony and having difficulty recalling three items as recorded in Dr. Tribulato's medical report dated January 27, 2015. Since Prochaska's limitation meets the criterion for a traumatic brain injury, the ALJ erred by not finding her disabled at the completion of the third step.

Despite the Court's finding that Prochaska's impairment met the criteria for a traumatic brain injury, the Court will address, in the alternative, Prochaska's two arguments below as if Prochaska's impairment did not meet the C.F.R. Pt. 404, Subpart P, App. 1 criteria.

**A. Psychiatric Review Technique**

Although the claimant bears the burden of showing that she is disabled in steps one through four, since social security hearings are non-adversarial in nature the ALJ has a duty to "develop the record fairly and fully, independent of the claimant's burden to press his case." *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004). This means the ALJ must ensure the record includes evidence addressing the alleged impairments at issue from either a treating or examining physician. *Ness v. Sullivan,* 904 F.2d 432,

435 (8th Cir. 1990). An "ALJ must not substitute his opinions for those of the physician." *Id.*

"[PRT] analysis is required to be conducted and documented at each level of the review process, including the ALJ level." *Nicola v. Astrue*, 480 F.3d 885, 887 (8th Cir. 2007). 20 C.F.R. § 416.920a(a)-(e). The PRT includes a determination of whether or not there is a mental impairment "followed by a rating of the degree of functional limitation resulting from the mental impairment." *Id.* The ALJ must complete this technique and include it in the written decision. *Id.*

Prochaska alleged, and the medical records establish that she had memory problems after her aneurysm. Dr. Filcheck's psychological interview documented memory problems including Prochaska's inability to remember complex instructions. The Commissioner argues that the ALJ was not required to perform a PRT because the ALJ did not find that Prochaska had a medically determinable mental impairment. However, the regulation requires that the ALJ "under the special technique" first evaluate the claimant's "pertinent symptoms, signs, and laboratory findings to determine whether [the claimant has] a medically determinable mental impairment." 20 C.F.R. § 404.1520a(b). In this case, instead of developing the record regarding Prochaska's potential mental limitation by evaluating Prochaska's symptoms, signs, and laboratory findings, the ALJ dismissed the issue altogether by stating that "any mental limitations the claimant has are associated with her physical impairment." This dismissal was not based on any medical evidence and rather, was an assertion based on faulty logic. A mental limitation is no less real because it stemmed from a physical impairment and a PRT analysis is generally needed under both factual situations at the ALJ level.

13

As a result, the ALJ erred in not performing a PRT analysis regarding Prochaska's potential mental impairment and therefore did not develop the record fairly and fully.

**B. Vocational Expert Testimony**

In the fourth step of the sequential analysis, the ALJ considers whether a claimant's impairments keep her from doing past relevant work. 20 C.F.R. §404.1520(e). A claimant's RFC is the most that one can do despite his/her limitations. 20 C.F.R. § 404.1545. The claimant is not disabled if the claimant retains the RFC to perform: "1) the actual functional demands and job duties of a particular past relevant job; or 2) the functional demands and job duties of the occupation as generally required by employers throughout the national economy." *Jones v. Chater*, 86 F.3d 823, 826 (8th Cir. 1996). During this step, an ALJ may consider the vocational expert's testimony when determining the claimant's RFC. *Wagner v. Astrue*, 499 F.3d 842, 853-54 (8th Cir. 2007). The ALJ often asks the vocational expert a hypothetical question to help determine whether a sufficient number of jobs exist in the national economy that can be performed by a person with a similar RFC to the claimant. *Guilliams v. Barnhart*, 393 F.3d 798, 804 (8th Cir. 2005).

A hypothetical question posed to a vocational expert as part of the RFC determination must be properly phrased to include all relevant impairments that are substantially supported by the record as a whole. *Pickney v. Chater*, 96 F.3d 294, 296 (8th Cir. 1996). If the hypothetical question does not include all relevant impartments the vocational expert's testimony cannot constitute substantial evidence to support the ALJ's determination. *Id.*

14

This court "review[s] the record to ensure that an ALJ does not disregard evidence or ignore potential limitations but [does] not require an ALJ to mechanically list and reject every possible limitation." *McCoy v. Astrue*, 648 F.3d 605, 615 (8th Cir. 2011). An ALJ is not required to discuss all the evidence in the record to show that it was properly considered. *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000). "Simply because a matter is not referenced in the opinion does not mean the ALJ failed to rely on the evidence in making his determination. However, this does not give an ALJ the opportunity to pick and choose only evidence in the record buttressing his conclusion." *Taylor ex rel. McKinnies v. Barnhart*, 333 F. Supp. 2d 846, 856 (E.D. Mo. 2004). An ALJ "must minimally articulate his reasons for crediting or rejecting evidence of disability." *Ingram v. Chater,* 107 F.3d 598, 601 (8th Cir. 1997) (quoting *Scivally v. Sullivan,* 966 F.2d 1070, 1076 (7th Cir.1992)).

Prochaska argues that the ALJ erred by failing to include all of Prochaska's limitations in his hypothetical question to the vocational expert and therefore his RFC assessment. Specifically, Prochaska argues that despite assigning "great weight" to Dr. Tribulato's opinion, the ALJ omitted the physician's opinions that (a) Prochaska was limited in her ability to lift and carry, (b) Prochaska was limited in her ability to bend and twist, (c) Prochaska could not climb or crawl, and (d) Prochaska had obvious word-finding difficulty.

The ALJ's decision to omit Dr. Tribulato's opinion that Prochaska was limited in her ability to lift and carry was not substantially supported by the record as a whole. An ALJ may discredit a medical opinion where the physician's opined limitations are not consistent with the claimant's self-reported abilities. *Toland v. Colvin*, 761 F.3d 931, 936 (8th Cir. 2014). The Commissioner argues that Prochaska's self-reported abilities are not

15

consistent with Dr. Tribulato's medical opinion regarding Prochaska's ability to lift. Prochaska wrote on November 19, 2014 in her daily activities and symptoms report, that she does "not pick stuff up anymore that is over 20 lbs" and Tribulato's medical opinion from January 27, 2015, stated Prochaska is limited in her ability to lift and carry. Filing No. 8. Admin. R. at 256 and 326. This Court disagrees with the presumption that Prochaska's written statement from 2014 means that she could perform the 20-pound maximum lifting required for light work. As a result, there is not substantial evidence to discredit Dr. Tribulato's opinion that Prochaska was limited in her ability to carry and lift.

The ALJ's decision to omit Dr. Tribulato's opinion that Prochaska could not climb was not substantially supported by the record as a whole. The ALJ made no logical connection as to why he added the qualification of ladders and no exposure to hazards such as unprotected heights to Dr. Tribulato's limitation of no climbing. The ALJ cannot pick and choose different limitations with no evidence.

The ALJ's decision to omit Dr. Tribulato's opinions that Prochaska was limited in her ability to bend and twist, could not crawl, and had obvious word-finding difficulty were also not supported by the record. The ALJ's conflicting determinations that Dr. Tribulato's opinion was afforded "great weight" and that Dr. Tribulato's opinion that the claimant could only perform sedentary work was discredited, did not give solid foundation for the ALJ to pick and choose which limitations supported his conclusion within Dr. Tribulato's medical report. The ALJ did not minimally articulate his reasons for leaving out specific limitations and did not logically differentiate them from Dr. Tribulato's other opinions which he included in his hypothetical and subsequent RFC determination.

For the foregoing reasons, this Court concludes that the ALJ's hypothetical to the vocational expert was incomplete and therefore his reliance on the vocational expert's response was not proper. As a result, the RFC was not based on substantial evidence.

## CONCLUSION

If the record presented to the ALJ contains substantial evidence supporting a finding of disability, a reviewing court may reverse and remand the case to the district court for entry of an order granting benefits to the claimant. *Parsons v. Heckler*, 739 F.2d 1334, 1341 (8th Cir. 1984). In this case, Prochaska met the criteria for the listings definition of a traumatic brain injury. Her previous work is considered unskilled or semi-skilled and would involve few, if any, transferable skills. In addition, her educational development is limited, and she is over fifty years old and therefore considered "closely approaching advanced age." 20 C.F.R. § Pt. 404, Subpart. P, App. 2. Under the circumstances, further hearings would merely delay benefits; accordingly, an order granting benefits is appropriate. *Cunningham v. Apfel*, 222 F.3d 496, 503 (8th Cir. 2000).

IT IS HEREBY ORDERED:

1. The decision of the Commissioner is reversed; and

2. This action is remanded to the Commissioner with instructions to award benefits.

Dated this 10th day of April, 2019.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge